UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL JOHNSON, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 3:03cv151 (MRK) |
| : | |
| STATE OF CONNECTICUT : | |
| DEPARTMENT OF CHILDREN AND : | |
| FAMILIES; KRISTINE D. RAGAGLIA, : | |
| COMMISSIONER; ROXANNE DUMBROSKI, : | |
| CASEWORKER; and REBECCA FOURNIER, : | |
| SOCIAL WORKER INVESTIGATOR, : | |
| : | |
| Defendants. : | |

## MEMORANDUM OF DECISION

The plaintiff Michael Johnson is a prison inmate currently housed at the Radgiwsky Correctional Institution in Uncasville, Connecticut. Mr. Johnson brings this suit, *pro se* and *in forma pauperis*, pursuant to 42 U.S.C. §1983, on behalf of himself and his three minor children against the following defendants in their official capacities: the State of Connecticut Department of Children and Families ("DCF"); Kristine D. Ragaglia, Commissioner; Roxanne Dumbroski, Caseworker; and Rebecca Fournier, Social Worker Investigator. In his Complaint, Mr. Johnson alleges that the defendants carelessly neglected their duties and were indifferent to the risk of injury posed to his three minor children by his wife, Sophia Elene Peltier, and her paramour, Ray Morton-Lane, during Mr. Johnson's incarceration. In failing to secure the safety and health of his minor children, Mr. Johnson alleges that the defendants violated his children's civil rights and he asks the Court to grant him "such relief to which he may be entitled." Complaint [doc. #3] at 6 ("Compl.").

On August 22, 2003, the defendants jointly filed a Motion to Dismiss [doc. #15], pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. To date, Mr. Johnson has not responded to defendants' Motion to Dismiss. For the reasons state below, the Court hereby GRANTS defendants' Motion to Dismiss [doc. #15] on the grounds that the Eleventh Amendment bars the institution of suits against state agencies and state officials acting in their official capacities, thus depriving this Court of subject matter jurisdiction over this action.

I.

For purposes of the motion to dismiss, the Court will assume that the allegations set forth in the Complaint are true and draw all inferences in Mr. Johnson's favor. *See ICM Holding, Inc. v. MCI Worldcom, Inc.,* 238 F.3d 219, 221 (2d Cir. 2001). In addition, "[s]ince most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [the Court] must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 139-40 (2d Cir. 2000).

Since October of 2001, Mr. Johnson has been serving a three-year prison sentence and is presently incarcerated at the Radgowski Correctional Institution in Uncasville, Connecticut. Mr. Johnson is the father of three minor children, all born prior to his incarceration. Compl. at 2. Two of the children are as a result of Mr. Johnson's relationship with Ms. Peltier and a third was fathered in a previous relationship between Mr. Johnson and someone other than Ms. Peltier. However, all three children lived with Mr. Johnson and Ms. Peltier. *Id.*

During the first few months of Mr. Johnson's incarceration, initially at the Hartford

Correctional Center ("HCC"), Mr. Johnson and his wife maintained their relationship through numerous phone calls, letters, and daily visits. In or about January of 2002, Christopher Allen Johnson, the brother of Mr. Johnson, introduced Ms. Peltier to Mr. Morton-Lane. *Id.* In subsequent months, Ms. Peltier's contact with her husband, Mr. Johnson, became less frequent, with Ms. Peltier occasionally disappearing with the three children for days at a time. *Id.* at 3.

On or around March 3, 2002, when Ms. Peltier visited Mr. Johnson at the HCC, Mr. Johnson noticed that his wife had lost a considerable amount of weight and that she had a black eye. *Id.* When Mr. Johnson inquired about the black eye, Ms. Peltier claimed that it resulted from an auto accident. *Id.* Ms. Peltier informed him during the March 3, 2002 visit that she was, and had been, living with Mr. Morton-Lane for approximately two months. Mr. Johnson had known Mr. Morton-Lane for over 16 years and was aware that Mr. Morton-Lane was a convicted felon, a gang member, prone to violence, and a drug addict. *Id.* At the time Ms. Peltier became involved with Mr. Morton-Lane, Mr. Johnson was aware that Mr. Morton-Lane had recently been released from prison after serving a five-year criminal sentence. *Id.* In light of Mr. Morton-Lane's personal and criminal history, Mr. Johnson expressed concern to Ms. Peltier for her safety as well as for the safety of his three children, and he asked that Ms. Peltier avoid exposing the children to Mr. Morton-Lane. *Id.* Ms. Peltier rejected Mr. Johnson's characterization of Mr. Morton-Lane and insisted she would be fine. *Id.* The March 3, 2002 meeting was the last time Mr. Johnson's wife visited him, and thereafter phone calls between the two became sparse. *Id.*

In the months following the March 3, 2002 meeting with his wife, Mr. Johnson heard through several friends that Ms. Peltier had been seen using drugs and drinking with Mr. Morton-Lane and that the children always appeared dirty and unhealthy. *Id.* Mr. Morton-Lane was very

distressed and upset at these reports, and, on or around April 25, 2002, conveyed his concern about the well-being and safety of his children to Mr. Gabriel Riccio, the Institutional School Principal at HCC.  *Id.*  Mr. Riccio asked Mr. Johnson what he would like to have done, and, upon Mr. Johnson's request, Mr. Riccio agreed to place a phone call on behalf of Mr. Johnson to defendant DCF.  *Id.*  Later that same day, Mr. Johnson was transferred to the Walker Reception Center ("WRC") in Suffield, Connecticut.  *Id.*

In or about mid-May of 2002, Mr. Johnson contacted Ms. Peltier through his mother.  *Id.* at 4.  Ms. Peltier was extremely upset with Mr. Johnson because defendant Roxanne Dombrowski, a worker from DCF, had paid an unannounced visit to Ms. Peltier's residence, at 218 Main Street, Manchester, CT, on the basis of Mr. Johnson's complaints to Mr. Riccio.  *Id.*  On or around May 17, 2002, Ms. Dombrowski reported to the WRC administration that Mr. Johnson's complaints and allegations were unfounded and that Ms. Peltier and the children's names should be deleted from Mr. Johnson's visitor's list.  *Id.*  However, at some point following Ms. Dombrowski's May 2002 visit to Ms. Peltier's home, Mr. Morton-Lane was arrested for probation violation, possession of a loaded firearm in the home, and threatening conduct.  *Id.* at 4.  A shot gun was found under a couch, within reach of the children.  *Id.*  In connection with Mr. Morton-Lane's arrest, defendant Rebecca Fournier, a social worker/investigator, made an unannounced visit to Ms. Peltier's home on or about October 4, 2002.

On or around December 27, 2002, Ms. Fournier issued a report which stated, in part: "On [October 24, 2002], this Social Worker conducted a home visit with Manchester Police Officer Bob Scarchuk. (This was in response that there was a reported gun in the home.) . . . On December 2, 2002, this Social Worker conducted an unannounced home visit to inform [Ms.

Peltier] that DCF would be opening the case . . . The children had dirty faces . . [One child] was still in her pajamas and it was 4 PM . . . Her hair was matted to her head. There was macaroni and cheese all over the couch and living room floor . . . On December 23, 2002 . . . Morton Lane was arrested and charged with violation of probation as he is a convicted felon (and a member of the BOWS [Brotherhood of White society] . . . Officer Morton reported that the house was a mess. Officer further reported that he was informed by Chris Gallagher that [Morton-Lane] forced the three-year old to inhale marijuana smoke from a bong and that Mother and her boyfriend sell drugs from the home . . ." *Id.* at 5.

Mr. Johnson claims that as a result of their negligence and indifference, defendants DCF, Ms. Ragaglia, Ms. Dumbrowski, and Ms. Fournier, failed to act in a timely manner to protect Mr. Johnson's children from exposure to the squalor and danger presented by Mr. Morton-Lane and Ms. Peltier, thus depriving Mr. Johnson's children of their civil rights.

II.

A motion to dismiss pursuant to Fed. R. Civ. Pro. R. 12(b)(1) challenges the propriety of the Court's exercise of subject matter jurisdiction over a case. Defendants in the present case assert that the Eleventh Amendment deprives this Court of subject matter jurisdiction over Mr. Johnson's claims against defendant DCF, a state agency, and the named defendants, since they have been sued in their official capacities. Where a defendant successfully demonstrates entitlement to sovereign immunity, the federal courts lack jurisdiction over the case and "the case must be stricken from the docket." *McGinty v. State of New York*, 251 F.3d 84,100 (2d Cir. 2001).

The Eleventh Amendment bars suits that seek from the State either money damages or

injunctive relief. *See Cory v. White*, 457 U.S. 85, 90-91 (1982) (holding that "the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction"); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974) (recognizing that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); *see McGinty v. State of New York*, 251 F.3d 84, 91 (2d Cir. 2001). Moreover

> [i]t has long been settled that the [Eleventh Amendment's] reference to actions against one of the United States encompasses not only actions in which a State is actually named as a defendant, but also certain actions against state agents and state instrumentalities. Thus, when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The State of Connecticut Department of Children and Families was established pursuant to Conn. Gen. Stat. § 17a-2 and is empowered, pursuant to Conn. Gen. Stat. § 17a-3, to "plan, create, develop, operate or arrange for, administer a comprehensive and integrated state-wide program of services . . . for children and youth whose behavior does not conform to the law or to acceptable community standards, or who are mentally ill, emotionally disturbed, substance abusers, delinquent, abused, neglected or uncared for . . ." DCF is a state agency or instrumentality and, as such, defendant DCF is entitled to Eleventh Amendment protection against all claims brought by Mr. Johnson. *See Carroll v. Ragaglia*, 292 F.Supp.2d 324, 342 (D. Conn. 2003)

While a finding of Eleventh Amendment immunity can be overcome under certain circumstances, those circumstances are not present in this case. There are two recognized

exceptions to a state's Eleventh Amendment immunity: "when Congress authorizes such a suit through enforcement of § 5 of the Fourteenth Amendment, and where a state consents to being sued." *McGinty*, 251 F.3d at 91 (citing *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expenses Bd.*, 527 U.S. 627, 670 (1999). Mr. Johnson has neither shown nor alleged that Congress abrogated Connecticut's sovereign immunity as to the claims presented in this case. In addition, defendants deny that Connecticut has consented to suit and the Court is not aware of any evidence to the contrary. Therefore, the State has not waived its immunity. Def.'s Mem. in Supp. of Mot. to Dismiss at 3. Since defendant DCF is immune from Mr. Johnson's suit, this Court must dismiss all claims against defendant DCF pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

In addition, Mr. Johnson's claims against the defendant state officials are also barred by the Eleventh Amendment to the extent that he seeks damages from those state officials in their official capacities. As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159 (1985):

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law. Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the officials' personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Id*. at 165-66 (citations and quotation marks omitted); *see Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993). Accordingly, any claim for money damages against the defendant state officials in their official capacities is also barred by sovereign immunity.

While the Eleventh Amendment bars recovery of monetary damages from state officials in their official capacities, there is "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment." *Ford,* 316 F.3d at 354-55; *see CSX Transp. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002). In determining whether the *Ex Parte Young* doctrine applies to this case and, as a result, permits plaintiffs' suit against the named defendants, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Ford*, 316 F.3d at 355 (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 636 (2002)).

Mr. Johnson's Complaint simply requests that "the court grant [plaintiff] such relief to which he may be entitled." While the breadth of the prayer for relief presumably includes injunctive relief, Mr. Johnson fails to spell out the nature of any prospective relief he seeks. While Mr. Johnson alleges that the defendants are engaged "in a continuing pattern on behalf of the Defendant State Agency," Compl. at 6, he fails to explain what this continuing pattern consists of and what Mr. Johnson would like the Court to order defendants to furnish by way of prospective redress. Moreover, the gravamen of Mr. Johnson's case is defendants' failure to protect the children from the harm to which they were exposed on December 23, 2002. Moreover, as Mr. Johnson states in the Complaint, not only was Mr. Morton-Lane arrested and charged with violating probation - and thus removed from the presence of the children - Ms. Fournier subsequently visited Ms. Peltier to inform her that DCF would open a case on Mr.

Johnson's children.

The Eleventh Amendment bars Mr. Johnson from seeking damages for any alleged harm resulting from the alleged failure on defendants' part to protect his children, while any possible injunctive relief – for example, separating the children from Mr. Morton-Lane and State monitoring of the children's welfare – appears to have already been provided. Thus, on the face of the Complaint, Mr. Johnson fails to allege an ongoing violation of federal law and fails to request relief properly characterized as prospective. Consequently, all claims against the named defendants in their official capacities are barred by the Eleventh Amendment, and are hereby dismissed.

Mr. Johnson has not indicated that he has sued any of the named defendants in their individual capacities; nor has he individually served any of the named defendants in their individual capacities. In addition, the Complaint alleges that the named defendants are engaged "in a continuing pattern *on behalf* of the Defendant State Agency," further underscoring that Ms. Ragaglia, Ms. Dumbrowski, and Ms. Fournier are sued in their official capacities. In these circumstances, the Court is unwilling to assume that Mr. Johnson intends to sue these defendants in their individual capacities.

If Mr. Johnson wishes to pursue claims against the defendants in their individual capacities, he will have to file an amended complaint and demonstrate in the amended complaint why these individuals should be liable for damages or injunctive relief for the conduct alleged. In that regard, Mr. Johnson should be aware that were he to pursue an action against the defendants in their individual capacities, they would be entitled to raise a defense of qualified immunity. "It is well settled that child protective services members are entitled to qualified

immunity for their conduct during the course of abuse investigations." *Wilkinson v. Russell*, 182 F.3d 89, 99 (2d Cir. 1999). The Second Circuit "has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context . . . Courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between difficult alternatives often need be made on the basis of limited or conflicting information. *Id.* at 104-05 (internal quotations and citations omitted).

The Court is mindful of and sympathetic to Mr. Johnson's anguish and frustration over the lamentable conditions to which his children were exposed. Also, Mr. Johnson has commendably sought to come to the aid of his children, both by registering complaints with DCF and now bringing this action. However, pursuant to Fed. R. Civ. R. 12(b)(1) and 12(b)(6), the Court cannot retain jurisdiction over Mr. Johnson's case as it is currently pleaded. Consequently, defendants' Motion to Dismiss [#15] is hereby GRANTED in its entirety.

However, the dismissal is without prejudice to Mr. Johnson's right to file and serve an amended complaint seeking prospective relief and/or recovery against defendants in their individual capacities. *See Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996) ("sparse pleadings by a *pro se* litigant unfamiliar with the requirements of the legal system may be sufficient at least to permit the plaintiff to amend his complaint to state a cause of action") (citation omitted); *see also* Fed. R. Civ. P. 15(a) (providing that leave to amend "shall be freely given when justice so requires"). Any amended complaint must be filed within **thirty (30)** days from the date of this order. Any such amended complaint must specify what, if any, prospective relief Mr. Johnson seeks from defendants at this time, and if he chooses to assert individual

capacity claims against the defendants, the amended complaint must allege facts sufficient to show the basis on which Mr. Johnson claims that the state officials are liable in their individual capacities.

    The Clerk is directed to close this case. Should Mr. Johnson file an amended complaint as directed, the Clerk's Office will reopen the file.

                                                                     IT IS SO ORDERED.

                                          /s/        Mark R. Kravitz
                                                                       U.S.D.J.

Dated at New Haven, Connecticut: <u>March 26, 2004</u>.